### TATE and others *against* THE PROTECTION INSURANCE COMPANY.

Where the command of  a vessel devolved upon the second mate, by the succes-
sive deaths of  the first  mate and  master, during the voyage;  it  was
*held, that he did not thus become the master of such vessel, within the*
meaning of the clause in the policy of insurance, which excludes  barratry
of the master, the assured being  owners, from  the risks insured against;
consequently, barratry committed by him, while thus in command, was the
act of a mariner, and one of the risks assumed by the policy.

THIS was  an action  upon a policy  of  insurance, made, in
the usual form, on the 17th day of *June*, 1845, for the sum of
6,750 dollars, upon the bark *Fame* and outfits, then on a
whaling  and elephantary  voyage to *Kergerland* and else-
where, and back to *New-London.*  Among  the perils insured
against,  was that of "barratry of the master, (unless the
assured be the owners of the vessel,) and of the mariners."

With respect to the loss, it was averred, in the declaration,
that on the 1st day of *March*, 1847, while the vessel was on
her voyage, the mariners on board, in a barratrous and fraud-
ulent manner, took and carried away the vessel, with the out-
fits, to places unknown to the assured, and converted her to
their own use.   The plaintiffs, having  abandoned to the de-
fendants the vessel and  outfits, claimed  to recover, as for a
total loss.

The cause  came on for trial  before the  superior court, in
the county of *New-London*, at the *March* term, 1850.

Upon the trial, the defendants admitted, that all the allega-
tions in the declaration  were proved, excepting  that the loss

was caused by the barratrous conduct of the mariners, as to which the following facts were agreed upon, by the parties.

When the vessel sailed upon her voyage, *Joseph B. Mitchell* was the master, *Joseph Penny,* the first mate, and *Anthony Marks,* the second mate, of the vessel ; *Mitchell* having been appointed, as such master, and *Penny* and *Marks* respectively shipped, as such mates, by the plaintiffs. In the prosecution of the voyage, *Penny* died, in consequence of a blow from a whale ; whereupon the duties of the first mate devolved upon and were exercised by *Marks.* After which *Mitchell* died ; whereupon the duties of master of the vessel devolved upon and were assumed and exercised by *Marks,* under whose command and direction the vessel was afterwards navigated, and, on her homeward voyage, brought to *Rio Janeiro,* where a new crew being shipped, the vessel was thence taken, under the direction of *Marks,* acting as such master, on a slave trading voyage or expedition to the coast of *Africa.* There a great number of slaves were, by him, procured and transported in the vessel to *Rio Janeiro,* and there disposed of. He then caused the vessel to be taken elsewhere, and converted her to his own use, whereby she became wholly lost to the plaintiffs, by the barratry of *Marks.* It was admitted also, by the plaintiffs, that they were owners of the vessel and outfits insured.

The defendants thereupon claimed, that *Marks* was, and should be deemed to be, the master of the vessel, and not one of the mariners thereof, when the barratry was committed, within the meaning and construction of that clause in the policy, enumerating the perils insured against, and specifying " barratry of the master (unless the assured be the owners of the vessel,) and of the mariners," as one of them. And it was further claimed, by the defendants, that if *Marks* was not then to be deemed the master, but one of the mariners of the vessel, the defendants were not liable to the plaintiffs on the policy, by the true construction of said clause, for the barratry of *Marks.*

Upon these facts the court decided, that upon the true construction of said clause in the policy, *Marks* was to be deemed one of the mariners, and not the master of the vessel, when the barratry was committed ; and that the defendants were

therefore liable to the plaintiffs on the policy, and rendered
judgment accordingly.

The defendants thereupon filed a motion for a new trial;
and the case was reserved for the advice of this court.

*Hungerford* and *T. C. Perkins,* (with whom was *Foster,*)
in support of the motion, contended,

1. That *Marks,* through whose barratry the vessel was
lost, by virtue of the original appointment, upon the death of
the first mate and the master, succeeded to all the authority,
rights and responsibilities of, and in fact became, the master
of said vessel, and was such, at the time the barratry was
committed. *Read* v. *Chapman,* 2 *Stra.* 937. The ship
*Favourite,* 2 *Rob. Adm. R.* 232. The brig *George,* 1 *Sumn.*
151. *Copeland* v. *New-Eng. Ins. Co.* 2 *Metc.* 432. *Par-
meter* v. *Todhunter,* 1 *Campb.* 541. *Jacobs. Sea Laws,* 123.

2. That the insurance, by the terms of the policy, is to
continue upon the vessel until the end of the voyage, whoever
may be the master of it: and the exception of the barratry of
the master from the perils insured against, is referable to any
master during the voyage; there being no intimation in the
policy, that it was intended to be limited to the master
directly appointed by the owners. Provision is made for a
change of masters; and the exception is no more applicable
to one than to another.

*Strong* and *Crump,* contra, contended, That the second
mate of a ship, upon whom, by the successive deaths of the
first mate and the master, during the voyage, the command
devolves, does not thus become the "master" of such ship,
within the meaning of the clause in the policy, which excludes
*barratry of the master, when the assured are owners,* from
the risks assumed by the underwriters. This position they
endeavoured to support, upon principle and authority.

1. Upon principle. In the first place, the object of this
exclusion relates only to masters proper, appointed by the
owners, and not to those who become commanders *accident-
ally,* as *Marks* did, in this case: the end in view being to
secure a close attention, on the part of the owners, to the in-
tegrity and competency of the master they appoint. Second-
ly and chiefly, to prevent *collusion* between the master and

*New-London,*
*July, 1850.*

Tate
*v.*
Protection
Insurance Co.

owners, to the defrauding of the underwriters. On both points, see *Earle & al.* v. *Rowcroft*, 8 *East*, 134. and *Ordinances of Rotterdam*, referred to in *Park on Insurance*, 85.

2. Upon authority. See the case of the brig *George*, 1 *Sumn.* 156. where the precise character which a mate has, who succeeds to the command, by the death of the master, came in question, and was determined by Judge *Story*, in conformity to the views of the plaintiffs here. The language of the court, in the case referred to by the defendants, in 2 *Metc.* 432. (445 and 446.) must be considered with reference to the question before them, which did not call for a determination of the precise character which a mate succeeding to the command, by the death of the master, bears to the ship, but only whether the want of any other commander than such mate renders a vessel unseaworthy, if she proceeds on her voyage from an intermediate port. The court cite the case in *Sumner* in support of their views, without any objection to any part of Judge *Story's* decision.

W<small>AITE</small>, J. The plaintiffs, in this case, were insured against the barratry of the mariners, but not against that of the master. The vessel was lost, by reason of the barratry of the second mate, committed after he had succeeded to the command, in consequence of the deaths of the first mate and the master, while the vessel was on her voyage, and in foreign parts ; and the question is, whether that was one of the perils insured against.

The practice formerly was, to insure against the barratry both of the master and mariners. Eminent judges have considered it extraordinary that the barratry of the former should have ever crept into insurances, and still more so, that it should have long continued in them. *Earle* v. *Rowcroft*, 8 *East*, 126. *Nutt* v. *Bourdieu*, 1 *Term R.* 323. 330. *Grim* v. *Phoenix Insur. Co.* 13 *Johns. R.* 451. 458.

Such a practice encourages collusion between the owner and master, and thereby opens a door for frauds upon the underwriters. It is said by *Marshall*, in his treatise on *Insurance*, that at *Rotterdam*, the owners of ships were prohibited from insuring against the barratry of the master, whom they themselves appoint, but were permitted to insure against that of the sailors, and of such a master as might succeed to

the command in foreign ports, without their knowledge, upon the decease or absence of the master originally appointed.  2 *Marsh. Ins.* 443.

In the present case, the barratry of the master, by the express terms of the policy, is excluded from the perils, against which the plaintiffs were insured; but the former practice in relation to the barratry of the mariners, remains unchanged.

Had the vessel been lost, by the barratry of *Marks*, the second mate, while she continued under the command of the original master, it is conceded, that the defendants would have been liable.  Does the accidental circumstance, that the master had previously died, make any difference with that liability? Had the plaintiffs done any act, by which *Marks* had been promoted to the command, the case might be different.  But here the plaintiffs have done nothing to affect their rights. *Marks* contracted to serve as second mate, and such he continued during the voyage, notwithstanding the deaths of his superior officers, by reason of which additional duties were cast upon him.  He was not the confidential agent of the owners, as was the case with the master appointed by them.

In *England*, where a master can not sue, in a court of admiralty, for his wages, it has been holden, that a mate, who succeeds to the command of a ship, upon the death or absence of the master, may sue in that court for his wages during the whole voyage.  But for his extra services, performed as commander of the ship, he must resort to the common law courts.  And the reason assigned, is, that having contracted to serve as mate, that character remains, although a new character is superinduced.  *Read* v. *Chapman*, 2 *Stra.* 937. *The Favourite*, 2 *Rob. Adm. R.* 192.  "He does not," says Judge *Story*, "cease to be mate, but has thrown upon him cumulatively the duties of master.  He is still mate, acting as master *pro hac vice.*"  *The brig George*, 1 *Sumn. R.* 151.

Such being the situation of *Marks*, at the time when the barratry was committed, it ought to be treated as the act of a mariner, for which the defendants made themselves responsible.  Such a construction, we think, is in conformity with the spirit and meaning of the policy.  The reasons for not

insuring against the misconduct of a master whom the owners appoint, do not apply to a case like the present. The danger of collusion does not exist.

A new trial, therefore, is denied.

In this opinion the other Judges concurred.

New trial not to be granted.